## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| BRYAN D. JONES, | ) | CASE NO. 1:25-CV-01338-CEH |
| | ) | |
| Plaintiff, | ) | JUDGE CARMEN E. HENDERSON |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| v. | ) | |
| | ) | MEMORANDUM    OPINION    AND |
| COMMISSIONER OF SOCIAL SECURITY, | ) | ORDER |
| | ) | |
| Defendant, | ) | |
| | ) | |

## I. Introduction

Bryan D. Jones ("Jones" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (ECF No. 8). For the reasons set forth below, the Court AFFIRMS the Commissioner of the Social Security's nondisability finding and DISMISSES Plaintiff's Complaint.

## II. Procedural History

The history of Plaintiff's claims spans several years and multiple trips to this Court. Plaintiff initially filed his application for DIB on November 19, 2018, and his application for SSI on January 21, 2020, both alleging a disability onset date of December 30, 2013  and claiming Plaintiff was disabled due to bilateral carpal tunnel syndrome, neuropathy, depression, anxiety, attention deficit hyperactivity disorder, a panic disorder, a social avoidance disorder, and degenerative disc disease in his back.  (ECF No. 7, PageID #: 2924).   The applications were

1

denied initially, upon reconsideration, and, following a hearing during which Claimant and an impartial vocational expert testified, in a written decision issued by administrative law judge ("ALJ") Catherine Ma on March 31, 2020.  (*Id.* at PageID #: 50-61).  The Appeals Council declined further review and Plaintiff appealed the denial of benefits to this Court.  (*Id.* at PageID #: 36-38).  Based on the parties' agreement, the Court remanded the case to the Commissioner for further proceedings on December 28, 2021.  (*Id.* at PageID #: 986).

On July 22, 2022, the Appeals Council remanded the case to the ALJ for further proceedings.  (ECF No. 7, PageID #: 988-92).  ALJ Ma held another hearing and again found Plaintiff not disabled in a written decision issued February 1, 2023.  (*Id.* at PageID #: 850-63).  Plaintiff appealed the decision directly to this Court and, on June 14, 2023, the Court again remanded to the Commissioner based on the parties' agreement.  (*Id.* at PageID #: 2200).

Following the second remand by the Court, the Appeals Council ordered that the case be assigned to another ALJ.  (ECF No. 7, PageID #: 2212-15).  ALJ Joseph Hajjar held a hearing on March 7, 2024, and issued an unfavorable decision on April 17, 2024.  (*Id.* at PageID #: 2892-2909).  Once again, Plaintiff appealed the decision directly to the Court and the parties stipulated to remand the proceedings, with the Court approving the stipulation on August 29, 2024.  (*Id.* at PageID #: 3039).  On October 28, 2024, the Appeals Council remanded to the ALJ for further proceedings.  (*Id.* at PageID #: 3030-34).

On March 11, 2025, ALJ Hajjar held a new hearing, during which Claimant, represented by counsel, and an impartial vocational expert again testified.  (ECF No. 7, PageID #: 2956-84).  On April 12, 2025, ALJ Hajjar issued a written decision, again finding Jones was not disabled.  (*Id.* at PageID #: 2924-42).  It is this decision that is at issue in these proceedings.

On June 27, 2025, Jones filed his Complaint to challenge the Commissioner's most recent decision.  (ECF No. 1).  The parties have completed briefing in this case. (ECF Nos. 11, 14). Jones asserts the following assignments of error:

> (1) The ALJ erroneously failed to comply with the Order of Remand when he failed to properly support and/or address consistency with his conclusions regarding the opinions of the treating and reviewing sources.
>
> (2) The ALJ erroneously failed to comply with the Order of Remand when he failed to properly apply the criteria of Social Security Ruling 96-8p and consider all Plaintiff's impairments and related limitations when forming the residual functional capacity evaluation.
>
> (3) The ALJ erroneously failed to comply with the Order of Remand when he failed to properly consider and evaluate Plaintiff's Complex Regional Pain Syndrome in accordance with Social Security Ruling 03-2p.

(ECF No. 11 at 1).

## III. Background

### A. Relevant Disability Allegations

The ALJ summarized Jones's relevant disability allegations:

> In terms of work-related limitations, the claimant alleged on January 14, 2019, that he had problems lifting, reaching, and using his hands (5E). The claimant also reported on January 14, 2019, that he did not have problems walking, standing, squatting, bending, sitting, kneeling, talking, hearing, seeing, or climbing stairs. (Id.). The claimant further alleged on January 14, 2019, that he had memory and concentration problems in addition to problems completing tasks, understanding, things, following instruction, and interacting with others. (Id.). In subsequent reports and hearing testimony, it has been alleged the claimant also has problems walking for more than a few minutes before having to stop and rest as well as problems squatting, bending, reaching, kneeling, and climbing stairs (5E; 11E; 20E; and 38E). The claimant has also alleged he used a cane for several years.

(ECF No. 7, PageID #: 2932-33).

3

**B.  Relevant Record Evidence**

The ALJ also summarized Jones's health records and other relevant evidence:

> Notably, in January 2014, the claimant complained of severe, bilateral hand weakness; examination findings noted slightly reduced grip strength (1F/4), and nerve testing showed the claimant had bilateral carpal tunnel syndrome, impairments confirmed by additional nerve testing n [sic] 2018 when the claimant underwent bilateral surgical releases (see, among other places in the record, 2F/3, 5, 8- 9; 6F/5, 11, 17-18; 7F/17). While the claimant reported symptom improvement following his surgeries, he has nonetheless continued to complain of wrist/hand pain and numbness, and decreased grip strength (see, for example, 6F/3; 7F/31; 8F/5; 10F/10; 14F/3; 15F/59). Nerve testing in 2019 also showed bilateral median mononeuropathy distal to the wrist without active denervation that was significantly improved since the prior study in February of 2018 (10F/6), and nerve testing in 2022 was interpreted as being unchanged from the prior study (28F/15). More recently, in 2023, the claimant was diagnosed as having complex regional pain syndrome, an impairment he has received injection therapy for (28F/8; 33F/12).
>
> Other positive findings have included mildly positive Tinel's signs, decreased pinch and grip strength, tenderness of the upper extremities, some limited discriminatory sensation over the median distribution; and increased sensation of the upper extremities to vibration bilaterally (see, for example, 16F/27; 22F/ 9, 12; 28F/1; 30F/12). However, the claimant has routinely been described as having normal upper extremity strength and there are references to normal fine finger movement (see, for example, 1F/4; 9F/27; 16F/16, 20; 22F/6, 9, 12, 20; 30F/8). The claimant has also been described on different occasions since December 30, 2013, as having a normal gait, normal lower extremity strength, normal sensation, and a normal gait (see, for example, 5F/2; 6F/16, 17; 9F/7; 10F/20; 16F/20; 20F/30, 45, 60; 22F/6, 17, 22, 23; 25F/8; 30F/8).
>
> In assessing the claimant's residual functional capacity, I have also considered the claimant has been mildly to moderately obese at different times since the December 30, 2013, alleged onset date (see, for example,2F/3; 5F/1; 6F/9; 9F/11; 22F/12; 31F/186). I have also considered the fact that the claimant has received relatively little treatment for his disc problems which were described in February 2014 as showing a small C5-C6 disc lesion without cord compression, and a small T6-T7 disc lesion without

cord compression (2F/2). The claimant was also diagnosed with degeneration and bulging of the C6-7 disc with no cord compression or neural foraminal compromise, and slight central disc protrusion in the mid to upper dorsal spine (2F/8-9).

The medical evidence also shows the claimant has received treatment for his mental impairments, counseling and medications. However, the claimant has continued to report mood instability and anxiety (see, for example, 10F/4; 20F/2, 8). Yet, the claimant has been described on numerous occasions since the December 30, 2013, alleged onset date as having normal mental signs including normal cognition, normal attention, normal memory, normal concentration, and normal behavior (see, for example, and among other places in the record, 4F/22, 37; 5F/2; 7F/6; 15F/10; 18F; 29F/213, 221, 229, 241, 261; 31F/144, 166; 33F/8; 36F; 37F).

In assessing the claimant's residual functional capacity, I have also considered his activities of daily living which have been relatively full. Again, and among other things, the claimant has reported being able to take care of his personal needs independently, cook, clean, wash clothes, operate motor vehicle, shop in stores, socialize with others, operate computers, and manage money (5E; 20E; 38E). Additionally, the claimant has continued to work part time as an overnight Walmart stocker since 2019, working eight-hour days, two to three days a week.

(ECF No. 7, PageID #: 2933-34).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2027.

2.  Because this case can be decided on medical and vocational grounds, I defer finding the claimant has engaged in disqualifying substantial gainful activity during different periods since the December 30, 2013, alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

3.  The claimant has the following severe impairments: bilateral carpal tunnel syndrome/status post release surgeries in 2018, complex regional pain syndrome involving both upper extremities diagnosed in 2023, degenerative disc disease of the spine, obesity,

a depressive disorder, anxiety, and attention deficit hyperactivity disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can frequently push and pull, operate hand controls, handle, finger, and feel bilaterally. The claimant can also frequently stoop, kneel, and crouch, and occasionally climb ramps and stairs and crawl, but he cannot climb ladders, ropes, or scaffolds. The claimant can also occasionally work on unprotected heights and around dangerous moving machinery. The claimant can also understand, remember, and carryout and complete instructions in jobs without strict production rate pace requirements such as assembly line work. The claimant can also tolerate occasional and superficial interactions with supervisors, coworkers, and members of the public – superficial defined as no arbitration, mediation, negotiation, or being responsible for the safety or supervision of others. The claimant can also adapt to occasional routine changes in the workplace.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

…

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 30, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(ECF No. 7, PageID #: 2927-28, 2932, 2940-41).

6

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant

7

work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

## C. Discussion

Jones raises three issues on appeal, arguing that (1) the ALJ failed to properly consider certain medical opinions; (2) the ALJ failed to consider all of Plaintiff's impairments and limitations in crafting the RFC; and (3) the ALJ failed to properly consider Plaintiff's Complex Regional Pain Syndrome ("CRPS") in accordance with Social Security Ruling ("SSR") 03-2p. (ECF No. 11 at 1).

### 1. Consideration of Medical Opinions

Plaintiff first challenges the ALJ's consideration of various medical opinions, arguing that the ALJ failed to assess the medical opinions in accordance with the relevant regulations. (ECF No. 11 at 12). Specifically, Plaintiff challenges the ALJ's consideration of opinions from Dr. Harry Hoyen, Ohio Guidestone providers, Dr. Aracelis Rivera, and Dr. Karla Delcour.[1] (*Id.*

---

[1] Plaintiff makes a single reference to an opinion from Dr. Puri concerning handling, fingering, and feeling, but fails to advance any argument with respect to Dr. Puri's opinion. (*See* ECF No. 11 at 17). Because Plaintiff fails to raise any issue relating to Dr. Puri's opinion in anything other than a perfunctory manner, the Court considers this argument waived and declines to address it further. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are

at 13-18).

Before proceeding to step four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence.  20 C.F.R. § 404.1520(e).  Under the current regulations, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)."  20 C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim.  *Id.*  Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c).  The factors include supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. § 404.1520c(c).  The ALJ is required to explain how he considered the supportability and consistency of a source's medical opinion but generally is not required to discuss other factors.  20 C.F.R. § 404.1520c(b)(2).  Under the regulations, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be" and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical findings(s) will be."  20 C.F.R. § 404.1520c(c)(1)-(2).

> a.  *Dr. Hoyen*

The ALJ discussed his consideration of Dr. Hoyen's opinions:

> I also reviewed the various opinions of the claimant's treating

---

deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

orthopedic surgeon, Harry Hoyen, M.D. (11F; 17F; 35F; 36F). First, I note that Dr. Hoyen, who performed the claimant's 2018 carpal tunnel release, completed on February 6, 2024, a mental impairment questionnaire wherein he indicated the claimant was unable to meet competitive standards or had no useful ability to function in every domain of mental functioning (36F).

The opinions of Dr. Hoyen in exhibit 36F are not persuasive. This is because they are not internally supported, and because the evidence concerning the claimant's mental functioning does depict such dysfunction at any time since the December 30, 2013, alleged onset date let alone over a continuous 12-month period. I also note here Dr. Hoyen did not treat the claimant for his mental impairments, and he is not psychiatrist.

I have also considered that, in January 2020, Dr. Hoyen said the claimant was capable of a reduced range of sedentary work where he could stand and walk without a cane and sit for four hours over an eight-hour workday. Dr. Hoyen also assessed significant manipulative limitations and said the claimant would be off task more than twenty-five percent of the workday, and require unscheduled breaks, and be absent more than four days per month (11F; 17F). Subsequently, in January of 2024, Dr. Hoyen found the claimant could stand and walk (but required a cane) and sit for less than two hours over an eight-hour workday while continuing to assess significant manipulative limitations and finding the claimant would be off task more than twenty-five percent of the workday, and require unscheduled breaks, and be absent more than four days per month.

I do not find Dr. Hoyen's opinions to be persuasive. In part, this is because they are not well supported within the four corners of the reports, or by his own records. Indeed, the claimant's treatment records fail to establish such significant limitation or this level of worsening from 2020 through 2024. In addition, the evidence taken whole concerning the claimant's physical functioning, including the evidence, and lack of evidence, referenced herein, does not show such dysfunction over any continuous 12-month period since the December 30, 2013, alleged onset date. It is also noted that there are no records of scheduled medical appointments or work shifts that were missed due to the claimant's symptoms to warrant the determination that he would be excessively absent. Moreover, Dr. Hoyen's opinions about off task behavior and work absences touch on a medical-vocational-legal issue reserved to me.

(ECF No. 7, PageID #: 2938-39).

Focusing on the two opinions concerning his physical impairments, Plaintiff argues the ALJ incorrectly found Dr. Hoyen's opinions unsupported and inconsistent, arguing "the medical evidence documented both a worsening of his impairments as well as dysfunction which exceeded a continuous 12-month period." (ECF No. 11 at 14). The Commissioner responds that the ALJ appropriately considered the supportability and consistency of Dr. Hoyen's opinions. (ECF No. 14 at 10-11). The Commissioner argues that even if substantial evidence would have supported a finding that the opinions were persuasive, the Court cannot overturn the ALJ's opposite finding so long as substantial evidence supports the conclusion reached. (*Id.* at 11).

Having reviewed the opinions at issue, the Court agrees with the Commissioner that the ALJ provided adequate explanation of how he considered the supportability and consistency of the opinions, and substantial evidence supports the ALJ's conclusions. Notably, supportability looks at the "objective medical evidence and supporting explanations presented by a medical source." 20 C.F.R. § 404.1520c(c)(1). The ALJ properly addressed this factor by noting the lack of support "within the four corners of the reports." (ECF No. 7, PageID #: 2939; *see id.* at PageID#: 660-63, 2878-81). The ALJ also clearly addressed consistency when he concluded that "claimant's treatment records fail to establish such significant limitation or this level of worsening from 2020 through 2024." (*Id.* at PageID #: 2939). As the ALJ noted earlier in the decision, evidence throughout the record indicated that at various times Plaintiff had normal upper extremity strength, normal fine finger movement, normal gait, normal lower extremity strength, and normal sensation. (*Id.* at PageID #: 2933; *see id.* at PageID #: 330, 502, 527, 619, 642, 1428, 1528, 1543, 1558, 1700, 1706, 1716-17, 1761, 2487). While Plaintiff cites additional records he asserts support Dr. Hoyen's opinion, the Court agrees that such amounts to a request that the Court reweigh the evidence and reach a different outcome, which is beyond the scope of

11

this Court's review.  Rather, "as long as the ALJ's findings were, as here, supported by substantial evidence, [a court] may not second-guess them, even if substantial evidence would support the opposite conclusion." *Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1007 (6th Cir. 2025); *see Greene ex rel. Green v. Astrue*, No. 1:10-cv-0414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010) ("[A] claimant does not establish a lack of substantial evidence by pointing to evidence of record that supports her position. Rather, [the claimant] must demonstrate that there is no sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion.").

    *b.  Ohio Guidestone*

    The ALJ provided the following discussion of opinions authored by social workers with Ohio Guidestone:

> The February 5, 2020, opinions of Jeannie Miller, MSSA and Jonathan Kissel, LSW (12F; 18F) and February 1, 2024, opinions of Jonathan Kissel, LSW (37F) were also reviewed. Initially, Ms. Miller and Mr. Kissel, who had been treating the claimant since 2018, found the claimant had no useful ability to function in the areas of working in coordination with or proximity to others or interacting appropriately with the public and seriously limited but not precluded or an unable to meet competitive standards in almost all other areas of mental functioning. They also found the claimant would miss several days of work per week and would be off task 100 percent of the workday. Subsequently, Mr. Kissel said that, due to the claimant's physical pain and limitations, which impacted his mood stability and anxiety, the claimant would have an unlimited/very good ability to manage a regular attendance and maintain socially appropriate behavior and a limited but satisfactory ability to sustain an ordinary routine without special supervision and set realistic goal/plans independent of others, but assigned either seriously limited or an inability to meet competitive standards in all other areas of mental functioning, including understanding and carrying out very short and simple instructions, completing a normal workday or workweek, interacting appropriately with the public, accepting instructions or responding appropriately to supervisors, and being aware of normal hazards or taking appropriate precautions. He also said the claimant would

miss several days of work per week and would be off task 80 to 90 percent of the workday. However, the providers' treatment notes fail to support such significant limitations, nor is there any explanation provided for the increase in the claimant's functional abilities from the January 2020 form to the January 2024 form. In addition, the record taken whole concerning the claimant's mental functioning, including the evidence, and lack of evidence, referenced herein does not support such dysfunction at any time since the December 30, 2013, alleged onset date let alone over a continuous 12-month period. These sources' opinions regarding sustainability also touch on a medical-vocational-legal issue reserved to me.

(ECF No. 7, PageID #: 2939).

Plaintiff argues that "[a]lthough the ALJ discussed these opinions and compared the restrictions, he failed to make any determination regarding persuasiveness" and "failed to address the fact that Plaintiff was receiving ketamine infusions for medication resistant depression" such that the ALJ did not discuss the supportability and consistency of the opinions. (ECF No. 11 at 15). The Commissioner responds that "[c]ontrary to Plaintiff's assertion, the ALJ specifically stated that the treatment notes of Mr. Kissel and Ms. Miller failed to support such significant limitations and that Mr. Kissel failed to provide any explanation for the increase in Plaintiff's functional abilities from the January 2020 form to the February 2024 form." (ECF No. 14 at 12). The Commissioner argues the ALJ was not required to specifically use the words supportability and consistency and consideration of the decision as a whole makes clear that the ALJ found the opinions unpersuasive. (*Id.* at 13). Concerning Plaintiff's ketamine infusions, the Commissioner argues such were administered for Plaintiff's neuropathy-related pain rather than depression but, regardless of the reason for the treatment, the ALJ was not required to discuss every piece of evidence in the record. (*Id.*).

While Plaintiff is correct that the ALJ did not explicitly indicate how persuasive he found these opinions, the Court agrees with the Commissioner that the ALJ's discussion makes clear

13

that he found the opinions unpersuasive.  *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (courts look at an ALJ's decision "as a whole" when determining if it complies with the regulations).   In considering the opinions, the ALJ appropriately considered the opinions' supportability and consistency as required by the regulations.  Specifically, the ALJ addressed supportability by noting that the opinions lacked explanation for the change in Plaintiff's abilities from 2020 to 2024 and were not supported by the providers' treatment notes. (ECF No. 7, PageID #: 2939).  The ALJ addressed consistency when he noted that the record as a whole did not support the level of dysfunction for any period since the December 30, 2013 alleged onset date.   (*Id.*).   Because the ALJ properly considered the supportability and consistency of the opinions and substantial evidence supports the ALJ's conclusions, any error by the ALJ in not specifically indicating the level of persuasiveness assigned to the opinions was harmless.

In arguing that the ALJ's decision is not supported, Plaintiff cites evidence concerning his ketamine injections and argues the ALJ failed to properly consider these injections.  (ECF No. 11 at 15).  However, while Plaintiff testified that his "psychiatry had actually recommended that [he] get ketamine treatment for medication resistant depression," the only records the Court can find from Ohio Guidestone concerning ketamine are Plaintiff's own reports that he was looking into the treatment or had begun receiving injections "for pain."  (ECF No. 7, PageID #: 2969; *see id.* at PageID #: 2788, 3317, 3390, 3460, 3701, 3781, 3839).  Other records support that the ketamine infusions were given "for chronic pain," rather than for any mental impairment. (*Id.* at PageID #: 3595).  Thus, the Court sees no reason to find the ALJ's conclusion regarding the Ohio Guidestone opinions unsupported based on his failure to discuss what appears to be wholly unrelated treatment.

14

   c.   *Dr. Rivera & Dr. Delcour*

   The ALJ provided the following discussion of the opinions of Dr. Rivera and Dr. Delcour:

> I considered the opinions of Aracelis Rivera, Psy.D and Karla Declour, Ph.D. State agency psychologists who respectively reviewed this record on February 23, 2019, and May 31, 2019 (2A, 4A). According to these sources, the claimant could perform three- to four-step tasks in an environment with flexible production standards and schedules and involving static tasks in settings without frequent changes where changes are introduced in advance; he was deemed capable of interacting with others superficially and infrequently.

> These opinions are generally persuasive because they have internal support and are not inconsistent with other evidence showing greater or additional limitations over any continuous 12-month period since the December 30, 2013, alleged onset date. That said I have not adopted these sources choice to describe the claimant's residual functional capacity in terms of the number of work steps he can follow. This is because Social Security regulations and rulings do not provide for describing an individual's residual functional capacity this way, consistent with the fact the Dictionary of Occupational Titles does not describe jobs in terms of the number of steps involved with the work. However, having considered the Appeals Council order requiring an assessment of the "quality" of social interactions, I have now determined the claimant has been limited to superficial interactions with supervisors, coworkers, and members of the public, a determination consistent with Drs. Rivera's and Delcour's opinions on this point. However, whereas these sources did not define what they meant by "superficial," this decision does. In addition, I have specifically described the amount of time the claimant can interact with others by using the word occasionally, a word that has a specific definition, instead of adopting Drs. Rivera's and Delcour's use of the word infrequently.

(ECF No. 7, PageID #: 2937).

   Plaintiff argues that "[r]egardless of the attempt to translate the opined limitations, the ALJ still erred when he failed to address the additional limitations of a need for flexible production standards and schedules." (ECF No. 11 at 16-17). The Commissioner responds that

reframing of limitations for clarity or converting limitations into vocationally relevant terms is not improper, and the ALJ adequately accounted for the "flexible production standards and schedules" limitation in the RFC by limiting Plaintiff to jobs "without strict production rate pace requirements."  (ECF No. 14 at 13-14).

The Court agrees with the Commissioner.  "Even where an ALJ provides 'great weight' to an opinion, there is not requirement that an ALJ adopt a state agency psychologist's opinion verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015).  Here, the ALJ adequately accounted for the opinions' "flexible production standards" limitation when he limited Plaintiff to jobs "without strict production rate pace requirements such as assembly line work."  (ECF No. 7, PageID #: 2932).  Courts have found such a reframing of limitations appropriate.  *See Jackson v. Colvin*, No. 1:14-CV-177, 2015 WL 1412314, at *9 (S.D. Ohio Mar. 23, 2015) (finding "the RFC reasonably accommodated Dr. Rudy's limitation to flexible production standards by precluding Plaintiff from performing at the strict pace of a production line"); *Kawecki v. Comm'r of Soc. Sec.*, No. 4:25-CV-00933-DAP, 2026 WL 81754, at *4, 9 (N.D. Ohio Jan. 12, 2026), *report & recommendation adopted*, 2026 WL 304400 (N.D. Ohio Feb. 5, 2026) (finding RFC precluding work at a production rate pace incorporated State agency opinions' finding that claimant could perform work "with flexible production standards").  Because the ALJ incorporated the opined limitations in the RFC, the Court finds no error in his consideration of these opinions.

### 2.  Consideration of All Impairments

Plaintiff next argues the ALJ "failed to consider the totality of Plaintiff's physical and psychological impairments."  (ECF No. 11 at 18).  Plaintiff summarizes medical records

concerning his hand pain and psychological issues and asserts that the ALJ "disregarded these established symptoms and restrictions and continued through the sequential evaluation clearly failing to consider any of these symptoms when forming his RFC." (*Id.* at 19).

The Commissioner responds that "[c]onsistent with agency policy, the ALJ weighed the evidence, including the medical evidence, daily activities, part-time work activity, medical opinions, prior administrative medical findings, and Plaintiff's allegations, and assessed Plaintiff's RFC based on his consideration of the record as a whole" and substantial evidence supports the RFC. (ECF No. 14 at 15). The Commissioner argues that "[i]n citing evidence he believes does not support the ALJ's RFC finding, Plaintiff is inviting the Court to reweigh the evidence by promoting his own alternative interpretation of the record," which is improper. (*Id.* at 16-17).

In crafting the RFC, the ALJ must "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5. Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7. Thus, "[i]n rendering his RFC decision, the ALJ must give some indication of the evidence upon when he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (citations omitted). A court "cannot uphold an ALJ's decision, even if there is 'enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Id.* at 877.

Here, the ALJ provided a detailed explanation of how he formulated Plaintiff's RFC,

including specifically listing the facts he relied on in support of both the physical and mental

limitations:

> Considering all the evidence, I accept to a degree some of the allegations that have been made regarding the claimant's impairments, symptoms, and functioning. This is partly because the claimant's impairments can cause the alleged symptoms. This is also because the alleged symptoms are documented to a degree in the claimant's medical records.
>
> I have accounted for the claimant's impairments and associated symptoms in part by determining the claimant has not been able to do the lifting and carrying involved with medium work on a regular and continuing basis since the December 30, 2013, alleged onset date. However, subject to the above-described non-exertional limitations, the claimant has been able to perform light lifting and carrying. I have further accounted for the claimant's impairments and associated symptoms by determining the claimant has the above-described postural, manipulative, environmental, and mental limitations.
>
> Otherwise, I reject, for lack of sufficient support, allegations the claimant's impairments and symptoms have caused, over any continuous 12-month period since the December 30, 2013, alleged onset date, any additional or greater limitations.
>
> My determination the claimant does not have disabling symptoms, or a more restricted residual functional capacity, is supported in part by the objective evidence taken whole. To this point, I note the claimant's treatment records are strewn with references of normal physical and mental signs including normal strength, normal gait, normal motion, normal sensation, normal reflexes, normal coordination, normal cognition, normal attention, normal memory, normal concentration, and normal behavior (see above).
>
> My assessment of the claimant's residual functional capacity is further supported by these additional facts:
>
> • The claimant has received little treatment for his back complaints.
>
> • The claimant's treatment records since the December 30, 2013, alleged onset date contain relatively few to no complaints about ongoing problems lifting, reaching, walking, standing, sitting, squatting, bending, kneeling, talking, hearing, stair climbing,

seeing, remembering things, completing tasks, concentrating, pacing, understanding things, following instructions, applying information, adapting to changes, or managing his affairs.

• The claimant said on January 14, 2019, he did not have problems walking, standing, squatting, bending, sitting, kneeling, talking, hearing, seeing, or climbing stairs (5E).

• The claimant has not had to have any surgeries since his 2018 carpal tunnel releases.

• The claimant has not been hospitalized since the December 30, 2013, alleged onset date.

• It does not appear the claimant has been treated emergently since the December 30, 2013, alleged onset date.

• The claimant has not been medically reliant upon an assistive device since the December 30, 2013, alleged onset date.

• The claimant's pain complaints have not been treated aggressively with copious amounts of pain medications.

• It was stated on April 16, 2024, the claimant was "suspected" to have complex regional pain syndrome (39F/6), a diagnosis given in cases where symptoms are far greater than what is expected, and a diagnosis that detracts somewhat from saying for certain the claimant has complex regional pain syndrome.

• Significant, adverse, and ongoing medication side effects are not documented in the claimant's medical records.

• The claimant has reported medications have been effective (see, for example, 9F/11, 15, 17; 19F/10, 12, 18).

• The claimant's activities of daily living since December 30, 2013, also support the assessed residual functional capacity have been relatively full. Again, and among other things, the claimant has been able to operate motor vehicles, clean, cook, shop in stores, operate computers, socialize with others, watch television and movies, manage money, and work part-time with earnings suggestive of disqualifying substantial gainful activity.

The following previously noted facts concerning the claimant's mental functioning also support the assessed residual functional capacity:

• The claimant's medical records do not document ongoing problems he has had understanding, remembering, or applying information since the December 30, 2013, alleged onset date.

• The claimant has been working part-time at a Walmart store since 2019 without any identified issues relating to his ability to understand, remember, or apply information working there.

• The claimant has been able to understand medical directions since the December 30, 2013, alleged onset date.

• The claimant's treatment records show he has been able to understand and answer questions about his health since the December 30, 2013, alleged onset date.

• The claimant was able to understand and answer questions during his four hearings.

• The claimant's medical records since the December 30, 2013, alleged onset date do not document ongoing problems he has had interacting with others.

• The claimant was able to interact adequately with Judge Ma and me respectively during his four hearings.

• The claimant's functioning has not been so poor at any time since the December 30, 2013, alleged onset date that it has attracted the attention of authorities.

• The claimant's medical records since the December 30, 2013, alleged onset date do not document ongoing problems he has had concentrating, persisting, or maintaining pace.

• The claimant is routinely described as being alert and oriented in all spheres with normal thought processes.

• The claimant was able to concentrate during his four hearings.

• The claimant's medical records since the December 30, 2013, alleged onset date have not documented ongoing problems he has had adapting to changes or managing his affairs on account of a mental impairment(s).

• The claimant is generally independent in self-care and activities of daily living.

20

• The claimant's psychological symptoms are managed with counseling and medications.

• The claimant has not been psychiatrically hospitalized since the December 30, 2013, alleged onset date.

• The claimant has not been treated emergently for a mental impairment since the December 30, 2013, alleged onset date.

• The claimant is often described as being cooperative and calm.

(ECF No. 7, PageID #: 2934-36).

This detailed explanation indicates that the ALJ conducted a detailed review of the record and considered all of Plaintiff's impairments and symptoms that he found supported in crafting the RFC and substantial evidence supports the ALJ's conclusion.  Considering this detailed explanation, it is hard to interpret Plaintiff's argument as anything more than a request that the Court reweigh the evidence and reach a different conclusion, which is beyond this Court's scope of review.  *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.") (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)).  Because substantial evidence supports the ALJ's RFC determination, it must be upheld, even if evidence in the record could also support an alternative conclusion.

**3.  Consideration of Plaintiff's CRPS**

Finally, Plaintiff argues that the ALJ reviewed evidence concerning Plaintiff's CRPS, acknowledged such as a severe impairment, but failed to consider Plaintiff's CRPS in accordance with SSR 03-2p.  (ECF No. 11 at 21-22).  Plaintiff argues the ALJ "failed to either

discuss the relevant Ruling or take into account the fact that the associated pain may exceed the severity of the injury." (*Id.* at 22).

The Commissioner responds that the ALJ complied with SSR 03-2p "by considering the listings he believed to be most relevant to Plaintiff's symptoms," even though the ALJ did not cite SSR 03-2p. (ECF No. 14 at 18).  Further, "[c]ontrary to Plaintiff's assertion, the ALJ explicitly acknowledged that pain associated with CRPS might exceed the severity of the injury, stating that CRPS is a diagnosis given in cases where symptoms are far greater than what is expected." (*Id.* at 18-19 (citation modified)).

Under SSR 03-2p, "[c]laims in which the individual alleged RSDS/CRPS are adjudicated using the sequential evaluation process, just as for any other impairment." SSR 03-2p, 2003 WL 22399117, at *6.  If an individual's CRPS is determined to be a severe medically determinably impairment, the ALJ must consider whether the impairment meets or equals any listed impairment. *Id.*  If it does not, the ALJ must craft an RFC and proceed to the fourth and fifth steps of the sequential evaluation. *Id.* at *6-7.  "[I]n determining RFC, all of the individual's symptoms must be considered in deciding how such symptoms may affect functional capacities. Careful consideration must be given to the effects of pain and its treatment on an individual's capacity to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Id.* at *7.  "SSR 03-2p's guidance on assessing a claimant's RFC mirrors the guidance provided by social security rulings for other medical disorders." *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 439 (6th Cir. 2017).

Here, the ALJ complied with SSR 03-2p.  The ALJ found Plaintiff's CRPS to be a medically determinable severe impairment.  (ECF No. 7, PageID #: 2928).  The ALJ next considered whether the combination of Plaintiff's impairments met or equaled a listing,

specifically discussing Listings 1.15, 1.16, and 11.14, as well as the four broad functional areas of mental functioning used for evaluating mental disorders under the listings.  (*Id.* at PageID #: 2928-31).  The ALJ then proceeded to determine Plaintiff's RFC, noting Plaintiff's complaints of pain and CRPS diagnosis but also citing relatively normal findings and Plaintiff's daily activities, including working part time.  (*Id.* at PageID #: 2932-35).  While the ALJ did not specifically cite to SSR 03-2p, such is not required in situations where, like here, "the decision clearly comports with the five-step sequential evaluation process for [CRPS] claims prescribed by the ruling."  *Shepard*, 705 F. App'x at 439.  Thus, the ALJ did not err in considering Plaintiff's CRPS.

## VI. Conclusion

Based on the foregoing, the Court AFFIRMS the Commissioner of the Social Security Administration's final decision denying Plaintiff benefits.  Plaintiff's Complaint is DISMISSED.

Dated: February 27, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE